UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

*Plaintiff*,

v. Case No. 25-CR–250

BRADLEY ROSE,

*Defendant*.

---

## DEFENDANT'S SENTENCING MEMORANDUM

---

## I.

## INTRODUCTION

Bradley Rose has pleaded guilty and accepted responsibility for communicating a threat by an interstate commerce in violation of 18 U.S.C. § 875(c). The government and Mr. Rose jointly recommend a sentence of 2 years of probation with no contact provisions that adequately protect the victims in the case. Such a sentence fully accounts for the relevant sentencing factors and meets the § 3553(a) statutory objective of a sentence that is "sufficient, but not greater than necessary."

## II.

## LEGAL STANDARD AND SENTENCING GUIDELINES

A district court must first determine the defendant's sentencing range under the advisory guidelines for advice and then look to the factors outlined in 18 U.S.C. § 3553(a) to determine the appropriate sentence that is tailored to the

individual offender and his offense. *United States v. Adkins*, 743 F.3d 176, 189 (7th Cir. 2014); *see also United States v. King*, 861 F.3d 692 (7th Cir. 2017). The Court is directed to look at the sentencing guidelines as just one factor along with the other factors set forth in 18 U.S.C. § 3553(a). The sentencing guidelines thus are one of seven equally important factors for the Court to consider in determining a sentence that is "sufficient, but not greater than necessary" to comply with the purposes of § 3553(a)(2). A district court has broad discretion to impose a non-guidelines sentence. *United States v. Price*, 775 F.3d 828, 840 (7th Cir. 2014).

Rose agrees that the guidelines as calculated in the presentence report are accurate as prescribed by the guidelines.

| | |
|---|---|
| Base Offense Level | 12 |
| § 2A6.1(b)(2)(A) | +2 |
| Acceptance § 3E1.1(a) | -2 |
| Total | 12 |

PSR ¶¶ 27-35.

Rose has no prior criminal history points, which places him in Criminal History Category I. PSR ¶ 40. That results in a guideline range of 10 to 16 months. PSR ¶ 83. Mr. Rose is eligible for a term of probation of not less than 1 year nor more than five years according to both statutory and guideline authority. PSR ¶¶ 88-89.

## III.

## RELEVANT § 3553 SENTENCING FACTORS ALL SUPPORT A SENTENCE OF PROBATION.

The parties have jointly recommended a sentence of probation. That recommendation is supported by considering the offense conduct as balanced with Rose's personal characteristics, his acceptance of responsibility, and the fact that he has demonstrated for a significant period of time that he is specifically deterred and that he poses no continuing danger to the community.

### A. Offense Conduct and Rose's Response Since.

The PSR outlines conduct related to the first two counts, which will be dismissed. It outlines a period of time from late 2022 through the summer of 2025, when Rose increasingly experienced an extremely difficult emotional period in his life. Rose's brother, Brian, is disabled. He suffers from Velocardiofacial Syndrome (VCFS), which causes severe mental and physical health issues. After learning of his father's severe neglect of Brian in 2022, Rose eventually became Brian's guardian in April 2024. PSR ¶45. That responsibility, to find suitable care for his brother, while still working and caring for his own family, at times became too much for Rose. An example of that is outlined in Paragraph 10, when Rose requested family leave to find his brother a group home while his father was still the guardian. His father resisted, in part to continue to receive Brian's disability checks. It was an extremely stressful time for Rose. The family leave request was denied by Microsoft. *Id.* His relationship with his supervisor, P.M., which was already strained, became confrontational. It resulted in him leaving Microsoft in May 2022. Subsequent employment didn't

last more than several months at a time through the end of 2024. The software sales world is an interconnected one. At the time, Rose believed P.M. was hampering his employment opportunities.

From June 2024, until December 2024, Rose worked for Illumina Technologies. He had just gained guardianship of Brian. A.A. was his supervisor. On a day when Rose had requested to not have any meetings so that he could finally move Brian into a group home, A.A. requested to have a Teams video meeting. (A.A. resided in Colorado, while Rose resided in Bayside, WI). Despite being frustrated, Rose complied. The meeting did not go well. He was fired the same day. PSR ¶ 13.

On January 13, 2025, Rose sent A.A. a series of threatening texts, including one with pictures of a hand holding a gun. PSR ¶ 14. A.A. contacted the police. A deputy called Rose and informed him of a complaint by A.A. While Rose allegedly denied the conduct, he never again attempted to have communication with A.A. PSR ¶ 16. That conduct constitutes the facts for Count 3 of the Indictment, which is the count of conviction.

Also in January 2025, as his work life had seemingly unraveled, Rose sent threatening texts to P.M., who he still blamed for his employment challenges. Then in June 2025, P.M. observed a car who she believed to be Rose's outside her home. On July 16, 2025, P.M. received a dozen calls from Rose's cell phone number. She then filed a restraining order on August 1, 2025. (Waukesha Case No. 2025CV1509).[1] After an evidentiary hearing that petition was denied.

[1] This fact was not included in the PSR, but it is not required for any factual finding, guideline calculation, or conditions of supervision. The government is aware of this fact.

Importantly, however, despite prevailing in that hearing, Rose never again attempted to contact P.M.

Rose has readily accepted responsibility for his actions. (See PSR ¶¶ 23-25;. Exhibit A). And even months prior to the filing of this Indictment, he had ceased all contact with each individual identified in the PSR and Indictment.

**B. Rose's Personal Characteristics.**

Indeed, it is quite apparent from his conduct since August 2025, and those who know him best, that Rose has turned a corner in his life and closed that dark period. (See Exhibit B, letters of support). His wife, Casey, believes that during those few years Rose "was overwhelmed and unable to handle his brother's guardianship along with his own family and work responsibilities." PSR ¶ 51. She noted that "he has changed so much, and he now appreciates his family's love and support…" and that "mental health counseling has helped Mr. Rose understand the importance of moving on from the past for his family. ..and that he "benefits from counseling to manage his feelings." *Id.* She believes that he has healed and has moved forward. *Id.*

Rose's therapist provided a statement to the PSR writer. He notes that since April 2024, Rose has engaged in more than 40 counseling sessions. He notes that Rose has grown in self-awareness and insight and has stated that his children motivate him to live by higher standards for himself. PSR ¶ 60.

Rose is again employed (since January 2026), and reports that he is enjoying his job. As the PSR notes, he has abstained from using marijuana, and during the pendency of this case has complied with pretrial supervision for some 10 months. He has shown by attending counseling, maintaining employment,

and remaining completely sober that he is motivated, worthy of, and will be successful on probation.

C. The **§ 3553(a)(2) Factors Support a Sentence of Probation.**

Under § 3553(a)(2), the sentence imposed by the court must reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, protect the public form further crimes of the defendant, provide the defendant with needed educational or vocational training, medical care, or other treatment in the most efficient manner. *Id.* The joint recommendation for probation satisfies all of these factors.

As the Supreme Court has recognized, probation is a significant form of punishment. *Gall v. United States*, 552 U.S. 38, 44 (2007)("rather than 'an act of leniency,' [probation] is a 'substantial restriction of freedom'"). Here, that sentence adequately reflects the seriousness of the offense, promotes respect for the law and provides just punishment. Rose has no prior criminal history apart from a disorderly conduct many years ago. As a result of this conduct, he will now be a convicted felon and serve a sentence of probation. His threats were clearly made, but they were communicated over text messages and not backed by any physical violence.

Likewise, his conduct since the phone calls from the police telling him to stop his communications with a specific individual and even after prevailing in a restraining order hearing, show that he was already specifically deterred prior to the filing of the Indictment. In addition, that specific deterrence is shown through his conduct during the pendency of this case for more than ten months.

His conduct since the offense conduct also supports the conclusion that he

is no longer a threat to these individuals or the public. A conviction will result in disenfranchisement of his 2nd Amendment right, which further protects the public. More importantly, his counseling, family support and dedication to his family show that he appreciates the wrongfulness of his conduct, and he has shown he is motivated to never engage in this type of conduct again.

Rose's prosocial traits – a caring family, steady employment, willingness to engage in counseling – all support the joint recommendation to the Court. That difficult time in Rose's life has passed. We all face difficult times, and he will in the future, too. The difference is that he understands himself better now and has the tools and insight to handle those difficult times in a different way. Indeed, he has demonstrated that change for more than a year, and probation will ensure he continues to follow through on the changes he has already made. Finally, probation is certainly the most efficient way to achieve these sentencing objectives.

## IV.

## CONCLUSION

For all the reasons stated above, a sentence of probation is sufficient but not greater than necessary to meet appropriate sentencing objectives in this case.

Dated at Madison, Wisconsin, October 1, 2026.

Respectfully submitted,

*s/ Richard A. Coad*
Richard A. Coad
Wisconsin Bar No. 1052036

COAD LAW OFFICE, S.C.
10 E. Doty St., Suite 513
Madison, Wisconsin 53703